UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MIRNA HERNANDEZ, Individually and as Personal Representative of the Estate of AURA BEATRIZ GARCIA,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BOSTON, COMMISSIONER OF PUBLIC WORKS JOANNE MASSARO, SUPERINTENDENT OF BRIDGES AND BUILDINGS FOUAD HAMZEH, BEC ELECTRICAL, INC., CORA OPERATIONS, LLC, CORA OPERATIONS, INC., and ADVANCED ALARM SYSTEMS,<br><br>Defendants. | * * * * * * * * * * * * * * * * | Civil Action No.: |

## **PLAINTIFF'S COMPLAINT AND DEMAND FOR TRIAL BY JURY**

### **PARTIES**

1. The Plaintiff, Mirna Hernandez, is the sister of the decedent, Aura Beatriz Garcia, and is the duly appointed Personal Representative of the Estate of Aura Beatriz Garcia. Plaintiff resides in the Dorchester, County of Suffolk, in the Commonwealth of Massachusetts.

2. The Defendant, City of Boston (hereinafter "City of Boston"), is a Massachusetts government entity located in Boston, Suffolk County, Massachusetts and operates under the jurisdiction of the Commonwealth of Massachusetts. The Defendant City of Boston manages and operates the Department of Public Works and is responsible for its administration and the enforcement of its personnel practices, including, but not limited to, personnel selection procedures and enforcement of procedures and protocols.

3. The Defendant, City of Boston owns, manages and operates the Meridian Street Bridge, also known as the Andrew McArdle Bridge (hereinafter "the Bridge"), located in East Boston, Suffolk County, Massachusetts.

4. The tender of the Bridge, Louis Alfieri, was an employee of the City of Boston and a person for whose conduct City of Boston was responsible.

5. At all relevant times, the City of Boston and its servants, agents and/or employees or other persons for whose conduct they were responsible, had a duty to properly maintain and operate all public bridges.

6. The Defendant, Joanne Massaro (hereinafter "Defendant Massaro"), is employed by the City of Boston and was at all relevant times acting individually and/or in her official capacity as the Commissioner of Public Works.  Pursuant to this authority as the Commissioner of Public Works, Defendant Massaro established policies on behalf of the City of Boston's Public Works Department either by formal policy or by custom, and was responsible for the employment, training, supervision and conduct of the employees of the City of Boston's Public Works Department.

7. At all relevant times, Defendant Massaro was responsible for the overall care, operation and maintenance of the bridges in Boston, such as the Meridian Street Bridge, and to ensure that said bridges are safe for operation.

8. The Defendant, Fouad Hamzeh (hereinafter "Defendant Hamzeh"), is employed by the City of Boston and was at all relevant times acting individually and/or in his official capacity as the Superintendent of Bridges and Buildings.  Pursuant to this authority as the Superintendent of Bridges and Buildings, Defendant Hamzeh implemented policies on behalf of the City of Boston's Bridges and Buildings, either by formal policy or by custom, and was responsible for the employment, training, supervision and conduct of the employees of the Bridge.

9. At all relevant times, Defendant Hamzeh was responsible for the overall care, operation and maintenance of the vehicle and pedestrian bridges in Boston, specifically the Meridian Street Bridge.

10. The Defendant, BEC Electrical, Inc. (hereinafter "BEC") is a Massachusetts Corporation with its principal place of business at 161 Central Street, Norwell, Plymouth County, Massachusetts.

11. At all relevant times, BEC and its servants, agents and/or employees or other persons for whose conduct they were responsible, were responsible for developing the Bridge opening and closing procedures as well as training the City of Boston's employees.

12. The Defendant, Cora Operations, LLC (hereinafter "Cora LLC") is a Massachusetts Corporation with its principal place of business at 261 Maverick Street, East Boston, Suffolk County, Massachusetts.

13. At all relevant times, Cora LLC and its servants, agents and/or employees or other persons for whose conduct they were responsible, had a duty and responsibility to properly conduct all inspections, installations, services, maintenance and repairs of the Bridge in a safe and reasonable manner.

14. The Defendant, Cora Operations, Inc. (hereinafter "Cora, Inc.") is a Massachusetts Corporation with its principal place of business at 228 Maverick Street, East Boston, Suffolk County, Massachusetts.

15. At all relevant times, Cora, Inc. and its servants, agents and/or employees or other persons for whose conduct they were responsible, had a duty and responsibility to properly conduct all inspections, installations, services, maintenance and repairs of the Bridge in a safe and reasonable manner.

16. The Defendant, Advanced Alarm Systems (hereinafter "Advanced Alarm") is a Massachusetts Corporation with its principal place of business at 101 Lindsey Street, Fall River, Bristol County, Massachusetts.

17. At all relevant times, Advanced Alarm and its servants, agents and/or employees or other persons for whose conduct they were responsible, had a duty to properly install and maintain the video cameras located on the Bridge.

## JURISDICTION AND VENUE

18. Plaintiff seeks damages from Defendants pursuant to M.G.L. c. 258 §§ 2, 10(a), 10(j), 10(j)(2) and 10(j)(3).

19. Plaintiff also seeks damages from the Defendants under the Civil Rights Act of 1871, 42 U.S.C. §1983, for deliberate and unconscionable violations of rights, privileges and immunities guaranteed to Plaintiff's decedent, Aura Beatriz Garcia, by the Fourteenth Amendment to the United States Constitution. Accordingly, this Court has jurisdiction of this case pursuant to the provisions of 28 U.S.C. §§ 1331 and 1343.

20. Pursuant to 28 U.S.C. § 1391, Massachusetts is the proper venue because all events occurred in Massachusetts and all parties are residents of Massachusetts.

21. Pursuant to 28 U.S.C. § 1367, federal courts are permitted to exercise supplemental matter jurisdiction over all claims that form part of the same case or controversy under Article III of the United States Constitution.

## FACTS

22. Plaintiff's decedent, Aura Beatriz Garcia, was tragically killed on or about December 31, 2013.

23. At all relevant times, the Bridge operated as a drawbridge which was able to open and close with the physical interaction by a bridge tender.

24. At all relevant times, the Bridge tender was located in a designated 'booth' in close proximity to the Bridge.

25. At all relevant times, it was the City of Boston's bridge policy, created by Defendant BEC, to ensure that the bridge is cleared of any obstructions, including but not limited to passengers or cars, prior to opening the Bridge.[1]

---

[1] Said policy is attached hereto as Exhibit A.

26. At all relevant times, said policy was requested to be posted within the 'booth' of the draw bridge tender.
27. On or about December 31, 2013, an employee of Cora, Inc. was onsite at the time of the decedent's incident.

28. On or about December 31, 2013, spotlights placed on the steel arch of the Bridge were not working. [2]

29. On or about December 31, 2013 around 12:25 PM, the decedent, Aura Beatriz Garcia, was a 45 year old woman who was a lawful pedestrian crossing the Meridian Street Bridge in East Boston, Massachusetts, in the exercise of due care.

30. The Bridge tender, with deliberate indifference and/or carelessly and negligently operated the Bridge in such a manner that he opened the Bridge without observing if there were any pedestrians on the Bridge prior to opening it in reckless disregard for the safety of the public, which conduct shocks the conscience of a reasonable person.

31. While walking across the Bridge the bridge began to rise and Plaintiff's decedent, Aura Beatriz Garcia, clung to one of the two bridge plates while the Bridge was opening and screamed out for help. The City of Boston's employee closed the bridge on top of her, crushing Mrs. Garcia and ultimately causing her death.

32. Aura Beatriz Garcia's death was directly and proximately caused by the reckless conduct, gross negligence and/or deliberate indifference of the City of Boston and their servants, agents and/or employees including the Bridge tender, as well as the City of Boston's vendors and their employees, including the Defendants, BEC, Cora LLC, Cora Inc., and Advanced Alarm Systems, for whose conduct it was responsible. Due to their combined reckless conduct, gross negligence and/or deliberate indifference, the Bridge tender failed to observe and look for pedestrians on the Bridge, including witnessing Mrs. Garcia on said Bridge prior to opening. Their combined reckless conduct, gross negligence and/or deliberate indifference ultimately caused the death of Mrs. Garcia.

33. At all relevant times, the Bridge was managed and/or maintained by the Defendants. Specifically, the Defendants BEC, Cora LLC and Cora Inc. were directly involved in the mechanical and/or electrical operation of the Bridge and had a duty and responsibility to ensure that all work performed by its servants, agents and/or employees was done in accordance with acceptable quality standards. The Defendants also had a duty to inspect any safety issues relevant to the safe operation of the Bridge. In this respect, the controls utilized by the Bridge operator, together with the warning, surveillance and lighting devices, were inadequate and dangerous in that they allowed the operator to operate the Bridge without visually checking to make sure there were no pedestrians on the Bridge. As a result of the Defendants' careless and reckless disregard, gross negligence and/or deliberate indifference, the Defendants knew and/or should have known that the operation of the Bridge had inadequate surveillance warning and/or safety mechanics and constituted reckless disregard and/or gross negligence.

---

[2] Andrew McArdle Bridge Log attached hereto as Exhibit B.

## COUNT I
### City of Boston – Wrongful Death pursuant to M.G.L. c. 258 §§ 2, 10(a), 10(j), 10(j)(2), 10(j)(3) and M.G.L. c. 229 § 2

34. Plaintiff repeats and reavers the allegations of paragraphs 1 through 33 herein.

35. The City of Boston is a "public employer" as defined by M.G.L. c. 258 § 1. At all times relevant, servants, agents and/or employees of the City of Boston were acting within the scope of their employment.

36. Pursuant to M.G.L. c. 258 § 2, public employers are liable for personal injury or death caused by negligent or wrongful acts or omissions of any public employee while acting within the scope of their office or employment.

37. Pursuant to M.G.L. c. 258 § 10(a), public employers are liable for personal injury or death when the public employee does not exercise due care in the execution of any statute, regulation of a public employer, municipal ordinance or by-law.

38. Pursuant to M.G.L. c. 258 § 10(j), public employers are liable for personal injury or death originally caused by the public employer or any other person acting on behalf of the public employer.

39. Pursuant to M.G.L. c. 257 § 10(j)(2), public employers are liable for personal injury or death due to the intervention of a public employee which caused the injury or placed the victim in a worse position than she was in prior to the intervention.

40. Pursuant to M.G.L. c. 257 § 10(j)(3), public employers are liable for personal injury or death due to the negligent maintenance of public property.

41. At all relevant times, all servants, agents and/or employees of the Defendant, City of Boston, were acting within the scope of their employment.

42. At all relevant times, the City of Boston had a duty for the safety and care of the general public including, but not limited to, the decedent Aura Beatriz Garcia and her family.

43. The death of Mrs. Garcia was caused by the deliberate indifference and gross negligence of the Defendant, City of Boston, its agents, servants and/or employees by creating, approving, authorizing and implementing unsafe policies, procedures and protocols to be used by Bridge tenders, leading to the affirmative acts engaged in by the Defendant's agents, servants and/or employees, which created a danger and harmful consequences to the public, including, but not limited to, the death of Mrs. Garcia.

44. The death of Mrs. Garcia was caused by the deliberate indifference and gross negligence of the Defendant, City of Boston, its agents, servants and/or employees for affirmatively hiring, training and/or authorizing unsupervised and unprepared employees to conduct public business, leading to the affirmative acts engaged in by the Defendant's agents

servants and/or employees, which created a danger and harmful consequences to the public, including, but not limited to, the death of Mrs. Garcia.

45. The Defendant, City of Boston, had at all relevant times the duty and authority to maintain, or to require the maintenance of, adequate conditions for safe use of the Bridge and of the crossing of pedestrians, and the City of Boston did in fact undertake to maintain and/or to require the maintenance of such adequate conditions for such safe use.

46. The Bridge tender's affirmative acts of opening the Bridge with a pedestrian on it materially contributed to creating the dangerous condition and/or dangerous situation that resulted in the foreseeable harm and death of Mrs. Garcia.

47. As a direct and proximate result of Defendant City of Boston's gross negligence, Plaintiff's decedent suffered severe personal injuries resulting in death, conscious pain and suffering, mental anguish, loss of life's enjoyment and funeral expenses.

48. Plaintiff has complied with the requirements of M.G.L. c. 258 § 4 and presented notice of her claims to the City of Boston and Boston's Public Works Department, thereby complying with all notice requirements of said statute. The City of Boston had a six month period to respond to said notice and that period has now expired. Notice was sent to the City of Boston and the Department of Public Works on August 20, 2014.[3] The six month period expired on or about February 20, 2015. The Department of Public Works is an agency of the City of Boston and they are one and the same defendant for purposes of this claim.

49. The heirs at law and next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to compensation for the loss of the reasonably expected net income, services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred pursuant to M.G.L. c. 229 § 2 et seq.

## COUNT II
### BEC Electrical, Inc – Gross Negligence & Wrongful Death pursuant to M.G.L. c. 229 § 2

50. Plaintiff repeats and reavers the allegations of paragraphs 1 through 49 herein.

51. At all relevant times, Defendant BEC had a duty and responsibility to develop the Bridge opening and closing procedures and properly train the servants, agents and/or employees of the City of Boston of said procedures to ensure that all employees were acting according to the procedures, policies and regulations while operating the Bridge.

52. At all relevant times, all servants, agents and/or employees of Defendant BEC were acting within the scope of their employment.

---

[3] Said notices are attached hereto as Exhibit B.

53. Defendant BEC failed to properly train and educate the servants, agents and/or employees of the City of Boston of the opening and closing procedures, policies and regulations, including, but not limited to, the Bridge tender, and failed to implement and enforce said procedures, policies and regulations.

54. The death of Mrs. Garcia was caused by the carelessness and gross negligence of the Defendant, BEC, its servants, agents and/or employees including, but not limited to, the following ways:

    a. Failing to adequately and properly train the City of Boston employees on proper operation of the Bridge;
    b. Failing to properly implement the procedures, policies and regulations of the Bridge; and
    c. Breaching their duty of reasonable care to prevent foreseeable harm on the Bridge due to inadequate training by the Bridge tender.

55. Defendant BEC breached their duty of reasonable care owed to Plaintiff's decedent by failing to provide adequate training and assurance of Bridge tenders which resulted in Mrs. Garcia's death.

56. Had Defendant BEC, ensured that servants, agents and/or employees of the City of Boston were properly trained of the opening and closing procedures of the Bridge and had not acted with gross negligence and reckless and deliberate indifference, the Bridge tender would have observed Mrs. Garcia on the Bridge and she would have not been killed.

57. As a direct and proximate result of Defendant BEC's breach of duty of reasonable care, Plaintiff's decedent suffered severe personal injuries resulting in death, conscious pain and suffering, mental anguish, loss of life's enjoyment and funeral expenses.

58. The heirs at law and next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to compensation for the loss of the reasonably expected net income, services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred pursuant to M.G.L. c. 229 §2 et seq.

## COUNT III
**Cora Operations, LLC and Cora Operations, Inc – Gross Negligence & Wrongful Death pursuant to M.G.L. c. 229 § 2**

59. Plaintiff repeats and reavers the allegations of paragraphs 1 through 58 herein.

60. At all relevant times, Defendants Cora LLC and Cora, Inc. had a duty and responsibility to properly conduct all inspections, installations, services, maintenance and repairs on the Bridge, including, but not limited to selecting, installing and maintaining all reasonably

necessary devices including, but not limited to, video cameras and safety equipment for the proper and safe operation of the Bridge.

61. At all relevant times, Defendants Cora LLC and Cora, Inc. had a duty and responsibility to properly conduct all inspections, installations, services, maintenance and repairs on the Bridge, including, but not limited to, selecting, installing and maintaining all reasonably necessary devices, including, but not limited to, lighting devices on or near the Bridge for the proper safe operation of the Bridge.

62. At all relevant times, all servants, agents and/or employees of Defendants Cora, LLC and Cora, Inc. were acting within the scope of their employment.

63. The death of Mrs. Garcia was the caused by the carelessness and gross negligence of the Defendants, Cora, LLC and Cora, Inc, its agents, servants and/or employees including, but not limited to, the following ways:

   a. Failed to adequately inspect, install, service, maintain and repair appropriate video cameras and devices to alert the Bridge tender of pedestrians and/or vehicles on the Bridge;
   b. Failed to adequately inspect, install, service, maintain and repair appropriate lighting and lighting devices to assist the Bridge tender of pedestrians and/or vehicles on the Bridge;
   c. Failed to adequately inspect, install, service, maintain and repair appropriate warning devices to assist the Bridge tender of pedestrians and/or vehicles on the Bridge;
   d. Breaching their duty of reasonable care to prevent foreseeable harm on the Bridge due to inadequate video cameras and surveillance;
   e. Breaching their duty of reasonable care to prevent foreseeable harm on the Bridge due to inadequate lighting and lighting devices; and
   f. Breaching their duty of reasonable care to prevent foreseeable harm on the Bridge due to inadequate warning devices.

64. The video cameras and devices selected, installed, and maintained by Cora LLC and Cora, Inc. were negligently selected, installed, and maintained by Cora LLC and Cora, Inc., and were at all material times wholly inadequate to assist the Bridge tender in viewing pedestrians, including Plaintiff's decedent, on the Bridge.

65. The lighting devices selected, installed and maintained by Cora LLC and Cora, Inc. were negligently selected, installed and maintained by Cora LLC and Cora, Inc., and were at all material times wholly inadequate to assist the Bridge tender of viewing pedestrians, including Plaintiff's decedent, on the Bridge.

66. Defendants Cora LLC and Cora, Inc had a duty and legal responsibility to properly maintain the Bridge of any potential defects. Cora LLC and Cora, Inc. negligently failed to properly maintain the Bridge which was the direct and proximate cause of Mrs. Garcia's death.

67. Had the Defendants, Cora LLC and Cora Inc, ensured that the Bridge was fully and properly maintained, the Bridge tender should have observed Mrs. Garcia on the Bridge and she would not have been killed.

68. As a direct and proximate result of Defendants Cora LLC and Cora, Inc.'s breach of duty of reasonable care, Plaintiff's decedent suffered severe personal injuries resulting in death, conscious pain and suffering, mental anguish, loss of life's enjoyment and funeral expenses.

69. The heirs at law and next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to compensation for the loss of the reasonably expected net income, services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred pursuant to M.G.L. c. 229 § 2 et seq.

## COUNT IV
### Advanced Alarm Systems – Gross Negligence & Wrongful Death pursuant to M.G.L. c. 229 § 2

70. Plaintiff repeats and reavers the allegations of paragraphs 1 through 69 herein.

71. At all relevant times, Defendant Advanced Alarm had a duty and responsibility to properly conduct all inspections, installations, services and repairs on the Bridge, including but not limited to, selecting installing and maintaining all reasonably necessary devices, including, but not limited to, visible video cameras and devices on the Bridge for the safe use of surveillance for operation of the Bridge.

72. At all relevant times, all servants, agents and/or employees of Defendant Advanced Alarm Systems were acting within the scope of their employment.

73. The death of Mrs. Garcia was the direct and proximate cause of the carelessness and gross negligence of the Defendant, Advanced Alarm, its agents, servants and/or employees including, but not limited to, the following ways:

    a. Failed to adequately select, inspect, install and maintain video cameras and devices to alert the Bridge tender of pedestrians and/or vehicles on the Bridge;
    b. Negligently preserved and/or retained data recorder information relevant to the Bridge tender at the time of the incident; and
    c. Breaching their duty of reasonable care to prevent foreseeable harm on the Bridge due to inadequate video cameras and devices.

74. The video cameras and devices selected, installed and maintained by the Advanced Alarm were negligently selected, installed and maintained by the Advanced Alarm, and were at all material times wholly inadequate to assist the Bridge tender of viewing pedestrians on said Bridge.

9

75. Defendant, Advanced Alarm, had a duty and legal responsibility of properly installing and maintaining the video cameras. Advanced Alarm negligently failed to properly install and maintain the video cameras which prohibited the Bridge tender from fully observing the Bridge, and was the direct and proximate cause of Mrs. Garcia's death.

76. Had the Defendant, Advanced Alarm, ensured that their video cameras were properly installed to view the Bridge in its entirety, the Bridge tender would have observed Mrs. Garcia on the Bridge and she would not have been killed.

77. As a direct and proximate result of Defendant Advanced Alarm's breach of duty of reasonable care, Plaintiff's decedent suffered severe personal injuries resulting in death, conscious pain and suffering, mental anguish, loss of life's enjoyment and funeral expenses.

78. The heirs at law and next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to compensation for the loss of the reasonably expected net income, services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred pursuant to M.G.L. c. 229 § 2 et seq.

## COUNT V
### City of Boston – Deprivation of Constitutional Rights under the 14th Amendment pursuant to 42 U.S.C. § 1983

79. Plaintiff repeats and reavers the allegations of paragraphs 1 through 78 herein.

80. The Defendant, City of Boston, is a municipality and is considered a "person" within the meaning of § 1983.

81. A municipality is liable under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy inflicts injury." *Monell* v. *Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). "[T]he custom must have been the cause of and moving force behind the deprivation of constitutional rights." *Bordanaro* v. *McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989).

82. The City of Boston is a government entity as well as a public employer.

83. The City of Boston and its public employees assumed a voluntary duty of care to prevent personal injury or death stemming from the gross negligence and the deliberate indifference of its employees while acting under the scope of their employment by allowing the Bridge to be operated while pedestrians were on it.

84. At all relevant times, the employees of the City of Boston were acting under the scope of their employment, and were not only grossly negligent, but also deliberately indifferent and/or reckless in failing to abide by the policies that were in place.

85. At all relevant times, the deliberate indifference and reckless conduct of the City of Boston not abiding the policies that were in place was a direct causal link to Mrs. Garcia's death.

86. Under the "state created danger" theory of liability, an individual is liable when, while acting under color of state law, that individual takes conscience shocking actions which increase or creates danger or vulnerability of harm to another person, resulting in a deprivation of constitutional rights.

87. At all relevant times, the employees of the City of Boston were acting under the color of state law as a Bridge tender of the Meridian Street Bridge, and acted with reckless indifference and callous disregard to the safety and welfare of the public, including, but not limited to, the decedent, Aura Beatriz Garcia.

88. At all relevant times, Defendant City of Boston's actions were manifestly outrageous and conscience shocking as the affirmative actions of the Defendant's employee allowed the Bridge to be lifted without assessing if the Bridge was occupied with pedestrians prior to doing so and then to close the Bridge while the decedent was stuck on the Bridge.

89. The City of Boston's actions were so conscious shocking leading to the death of Mrs. Garcia including, but not limited to, the following ways:

    a. Deliberate indifference in failing to ensure that all Bridge tenders hired were properly trained and educated of the Bridge policies;
    b. Deliberate indifference in disregarding the Bridge policies in how to properly open the Bridge;
    c. Deliberate indifference in opening the Bridge without observing to see if there were any pedestrians on the Bridge; and
    d. Deliberate indifference in inadequately ensuring that all Bridge tenders under their supervision complied with all requirements of the policies of the Bridge, specifically observing the Bridge prior to opening.

90. As a direct and proximate result of the Defendant's affirmative actions, the decedent, Aura Beatriz Garcia, was placed in a position of danger and vulnerability and was ultimately caused to suffer and die.

91. As a direct and proximate result of the Defendant's actions, the decedent, Aura Beatriz Garcia, was deprived of her constitutional rights to life and liberty; interests which are protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

92. The heirs at law and next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to compensation for the loss of the reasonably expected net income, services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred pursuant to 42 U.S.C § 1983.

WHEREFORE, Plaintiff demands judgment against the Defendant, City of Boston, together with punitive damages, attorney's fees, with interest and costs.

## COUNT VI
**Commissioner of Public Works, Joanne Massaro – Deprivation of Constitutional Rights under the 14th Amendment pursuant to 42 U.S.C. § 1983**

93. Plaintiff repeats and reavers the allegations of paragraphs 1 through 92 herein.

94. A supervisor may be liable for harm directly caused by their subordinates. *Camilo-Robles* v. *Zapata*, 175 F.3d 41, 44 (1st Cir. 1999).

95. At all relevant times, the Commissioner of the Public Works Department, Defendant Massaro, was responsible to provide a quality environment for the City of Boston and ensure that the City's roadways, streets and bridges were safe.  As Commissioner of the Public Works Department, Defendant Massaro also had a duty to maintain and operate vehicle and pedestrian bridges including four major drawbridges.  As Commissioner of the Public Works Department, Defendant Massaro also maintains over 68,000 city-owned streetlights and maintains over 780 signalized intersections.

96. At all relevant times, as the Commissioner of the Public Works Department, Defendant Massaro was responsible for establishing, managing, and creating programs and policies for transportation throughout the City of Boston.

97. At all relevant times, Defendant Massaro was the primary mover behind the hiring, training and implementing policies, procedures and regulations of the Bridge.

98. At all relevant times, Defendant Massaro instituted and/or knowingly implemented, authorized, approved and/or acquiesced policies at the Bridge that were wholly inadequate in regards to the operation of the Bridge.  This affirmative act of deliberate indifference of Defendant Massaro was a direct causal link to Mrs. Garcia's death.

99. At all relevant times, Defendant Massaro improperly supervised and/or trained her subordinates on how to properly implement the opening and closing policies of the Bridge, which resulted in the tragic death of Aura Beatriz Garcia.  This affirmative act of deliberate indifference of Defendant Massaro was a direct causal link to Mrs. Garcia's death.

100. At all relevant times, Defendant Massaro improperly hired and trained Bridge tenders. This affirmative act of deliberate indifference of Defendant Massaro was a direct causal link to Mrs. Garcia's death.

101. At all relevant times, Defendant Massaro created, implemented and maintained a policy or custom of failing to properly observe the Bridge prior to opening it.  Defendant Massaro knew or should have known that there was a high and foreseeable risk that a pedestrian could have been injured or, in this case, could have died and that stricter policies should be implemented.

102. At all relevant times, Defendant Massaro's actions were manifestly outrageous and conscience shocking as the affirmative actions of the Bridge tender allowing the Bridge to open without observing the Bridge of pedestrians prior to opening it, which ultimately resulted in the death of Aura Beatriz Garcia.

103. As a direct and proximate result of Defendant Massaro's actions, the decedent, Aura Beatriz Garcia, was deprived of her constitutional rights to life and liberty; interests which are protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

104. The heirs at law and next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to compensation for the loss of the reasonably expected net income, services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred pursuant to 42 U.S.C § 1983.

WHEREFORE, Plaintiff demands judgment against the Defendant, Commissioner of Public Works, Joanne Massaro, together with punitive damages, attorney's fees, with interest and costs.

## COUNT VII
### Superintendent of Bridges and Buildings Fouad Hamzeh – Deprivation of Constitutional Rights under the 14th Amendment pursuant to 42 U.S.C. § 1983

105. Plaintiff repeats and reavers the allegations of paragraphs 1 through 104 herein.

106. A supervisor may be liable for harm directly caused by their subordinates. *Camilo-Robles* v. *Zapata*, 175 F.3d 41, 44 (1st Cir. 1999).

107. At all relevant times, as Superintendent of Bridges and Buildings, Defendant Hamzeh was responsible for efficient operation, maintenance and control of vehicle and pedestrian bridges including, but not limited to, four major drawbridges in the City of Boston, including the Meridian Street Bridge.

108. At all relevant times, Defendant Hamzeh was the primary mover behind the hiring, training and implicating policies, procedures and regulations of the Bridge.

109. At all relevant times, as Superintendent of Bridges and Buildings, Defendant Hamzeh had a duty to direct and control all employees of the Bridge in their normal course of duty.

110. At all relevant times, Defendant Hamzeh instituted and/or knowingly implemented, authorized, approved and/or acquiesced policies at the Bridge that were wholly inadequate in regards to the operation of the Bridge. This affirmative act of deliberate indifference of Defendant Hamzeh was a direct causal link to Mrs. Garcia's death.

111. At all relevant times, Defendant Hamzeh improperly hired and trained Bridge tenders. This affirmative act of deliberate indifference of Defendant Hamzeh was a direct causal link to Mrs. Garcia's death.

112. At all relevant times, Defendant Hamzeh improperly supervised and/or trained his subordinates on properly operating the Bridge, which resulted in the tragic death of Aura Beatriz Garcia. This affirmative act of deliberate indifference of Defendant Hamzeh was a direct causal link to Mrs. Garcia's death.

113. At all relevant times, Defendant Hamzeh created, implemented and maintained a policy or custom of failing to properly observe the Bridge prior to opening it. Defendant Hamzeh knew or should have known that there was a high and foreseeable risk that a pedestrian could have been injured or, in this case, could have died and that stricter policies should be implemented.

114. At all relevant times, Defendant Hamzeh's actions were manifestly outrageous and conscience shocking as the affirmative actions of the Bridge tender allowing the Bridge to open without observing the Bridge of pedestrians prior to opening it, which ultimately resulted in the death of Aura Beatriz Garcia.

115. As a direct and proximate result of Defendant Hamzeh's actions, the decedent, Aura Beatriz Garcia, was deprived of her constitutional rights to life and liberty; interests which are protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

116. The heirs at law and next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to compensation for the loss of the reasonably expected net income, services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred pursuant to 42 U.S.C § 1983.

WHEREFORE, Plaintiff demands judgment against the Defendant, Superintendent of Bridges and Buildings, Fouad Hamzeh, together with punitive damages, attorney's fees, with interest and costs.

### COUNT VIII
### BEC Electrical, Inc. – Deprivation of Constitutional Rights under the 14th Amendment pursuant to 42 U.S.C. § 1983

117. Plaintiff repeats and reavers the allegations of paragraphs 1 through 116 herein.

118. "Private persons, jointly engaged with state officials… are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents" *Adickes* v. *S. H. Kress & Co.*, 398 U.S. 144, 152 (1970) (quoting *United States* v. *Price*, 383 U.S. 787, 794 (1966))

119. At all relevant times, Defendant BEC had a duty to properly train all employees of the City of Boston who were employed for tendering the Bridge.

120. At all relevant times, Defendant BEC instituted and/or knowingly implicated policies for Bridge tenders what were wholly inadequate in regards to ensuring there were not pedestrians on the Bridge prior to opening it.

121. At all relevant times, Defendant BEC's deliberate indifference in improperly supervising and/or training the employees of the City of Boston on observing the Bridge to ensure there were no pedestrians on it prior to opening it, ultimately resulted in the death of Aura Beatriz Garcia. This affirmative act of deliberate indifference of Defendant BEC was a direct causal link to Mrs. Garcia's death.

122. At all relevant times, Defendant BEC's actions were manifestly outrageous and conscience shocking as the affirmative actions of the Bridge tender allowing the Bridge to open without observing the Bridge of pedestrians prior to opening it, which ultimately resulted in the death of Aura Beatriz Garcia.

123. At all relevant times, the deliberate indifference of the Defendant BEC not properly implementing the policy that they created, and that was in place, was a direct causal link to Mrs. Garcia's death.

124. As a direct and proximate result of the Defendant's affirmative actions, the decedent, Aura Beatriz Garcia, was placed in a position of danger and vulnerability and was ultimately caused to suffer and die.

125. As a direct and proximate result of Defendant BEC's actions, the decedent, Aura Beatriz Garcia, was deprived of her constitutional rights to life and liberty; interests which are protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

126. The heirs at law and next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to compensation for the loss of the reasonably expected net income, services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred pursuant to 42 U.S.C § 1983.

WHEREFORE, Plaintiff demands judgment against the Defendant, BEC Electrical, Inc., together with punitive damages, attorney's fees, with interest and costs.

## COUNT IX
**Cora Operations, LLC and Cora Operations, Inc. – Deprivation of Constitutional Rights under the 14th Amendment pursuant to 42 U.S.C. § 1983**

127. Plaintiff repeats and reavers the allegations of paragraphs 1 through 126 herein.

128. "Private persons, jointly engaged with state officials… are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents" *Adickes* v. *S. H. Kress & Co.*, 398 U.S. 144, 152 (1970) (quoting *United States* v. *Price*, 383 U.S. 787, 794 (1966))

129. At all relevant times, Defendants Cora LLC and Cora, Inc. had a duty and responsibility to properly maintain the Bridge including, but not limited to, maintaining and installing the video cameras and devices on or near the Bridge, and improperly installing adequate lighting on or near the Bridge.

130. At all relevant times, Defendants Cora LLC and Cora, Inc. installed and/or knowingly installed video cameras and devices that were wholly inadequate in regards to ensuring there were not pedestrians on the Bridge prior to the Bridge tender opening it. This affirmative act of deliberate indifference by Defendants Cora LLC and Cora, Inc. was a direct causal link to Mrs. Garcia's death.

131. At all relevant times, Defendants Cora LLC and Cora, Inc. installed and/or knowingly installed lighting that was wholly inadequate in regards to properly observing that there were not pedestrians on the Bridge prior to the Bridge tender opening it. This affirmative act of deliberate indifference by Defendants Cora LLC and Cora, Inc. was a direct causal link to Mrs. Garcia's death.

132. At all relevant times, Defendants Cora LLC and Cora, Inc. were deliberately indifferent in improperly and inadequately installing video cameras and devices to ensure there were no pedestrians on the Bridge prior to the Bridge tender opening it. This affirmative act of deliberate indifference by Defendants Cora LLC and Cora, Inc. was a direct causal link to Mrs. Garcia's death.

133. At all relevant times, Defendants Cora LLC and Cora, Inc. were deliberately indifferent in improperly and inadequately installing lighting to assist in ensuring that there were no pedestrians on the Bridge prior to the Bridge tender opening it. This affirmative act of deliberate indifference by Defendants Cora LLC and Cora, Inc. was a direct causal link to Mrs. Garcia's death.

134. At all relevant times, Defendants Cora LLC and Cora, Inc.'s deliberate indifference in improperly and inadequately installing video cameras and devices as well as appropriate lighting on the Bridge to assist the Bridge tender in ensuring that there were no pedestrians on it prior to opening it, ultimately resulted in the death of Aura Beatriz Garcia. This affirmative act of deliberate indifference by Defendants Cora LLC and Cora, Inc. was a direct causal link to Mrs. Garcia's death.

135. At all relevant times, Defendants Cora LLC and Cora, Inc's actions were manifestly outrageous and conscience shocking as the affirmative actions of the Bridge tender allowing the Bridge to open without the proper video cameras, devices and lighting to

assist him in observing the Bridge to see if there were pedestrians on the Bridge prior to opening it, which ultimately resulted in the death of Aura Beatriz Garcia.

136. As a direct and proximate result of the Defendant's affirmative actions, the decedent, Aura Beatriz Garcia, was placed in a position of danger and vulnerability and was ultimately caused to suffer and die.

137. As a direct and proximate result of Defendants Cora, LLC and Cora, Inc.'s actions, the decedent, Aura Beatriz Garcia, was deprived of her constitutional rights to life and liberty; interests which are protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

138. The heirs at law and next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to compensation for the loss of the reasonably expected net income, services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred pursuant to 42 U.S.C § 1983.

WHEREFORE, Plaintiff demands judgment against the Defendants, Cora Operations, LLC and Cora Operations, Inc., together with punitive damages, attorney's fees, with interest and costs.

## COUNT X
### Advanced Alarm Systems – Deprivation of Constitutional Rights under the 14th Amendment pursuant to 42 U.S.C. § 1983

139. Plaintiff repeats and reavers the allegations of paragraphs 1 through 138 herein.

140. "Private persons, jointly engaged with state officials… are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents" *Adickes* v. *S. H. Kress & Co.*, 398 U.S. 144, 152 (1970) (quoting *United States* v. *Price*, 383 U.S. 787, 794 (1966))

141. At all relevant times, Defendant Advanced Alarm had a duty and responsibility to properly maintain and install appropriate and adequate video cameras and devices on or near the Bridge.

142. At all relevant times, Defendant Advanced Alarm installed and/or knowingly installed video cameras and devices that were wholly inadequate in regards to ensuring there were not pedestrians on the Bridge prior to the Bridge tender opening it.

143. At all relevant times, Defendant Advanced Alarm were deliberately indifferent by inadequately and improperly installing video cameras and devices to ensure there were no pedestrians on the Bridge prior to the Bridge tender opening it. This affirmative act of

deliberate indifference by Defendant Advanced Alarm was a direct causal link to Mrs. Garcia's death.

144. At all relevant times, Defendant Advanced Alarm's actions were manifestly outrageous and conscience shocking as the affirmative actions of the Bridge tender allowing the Bridge to open without the proper video cameras and devices to assist him in observing the Bridge to see if there were pedestrians on the Bridge prior to opening it, which ultimately resulted in the death of Aura Beatriz Garcia.

145. As a direct and proximate result of the Defendant's affirmative actions, the decedent, Aura Beatriz Garcia, was placed in a position of danger and vulnerability and was ultimately caused to suffer and die.

146. As a direct and proximate result of Defendant Advanced Alarm's actions, the decedent, Aura Beatriz Garcia, was deprived of her constitutional rights to life and liberty; interests which are protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

147. The heirs at law and next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to compensation for the loss of the reasonably expected net income, services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred pursuant to 42 U.S.C § 1983.

WHEREFORE, Plaintiff demands judgment against the Defendant, Advanced Alarm Systems, together with punitive damages, attorney's fees, with interest and costs.

**WHEREFORE**, the Plaintiff, Mirna Hernandez, Individually and as Personal Representative of the Estate of Aura Beatriz Garcia demands judgment against the Defendants in an amount this Court deems just and appropriate plus all costs and interests allowed by law.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

    The Plaintiff,
    By Her Attorneys,

    /s/ David P. Angueira
    David P. Angueira, BBO No. 019610
    SWARTZ & SWARTZ, P.C.
    10 Marshall Street
    Boston, MA 02108
    (617) 742-1900
    dangueira@swartzlaw.com

|  |  |
|---|---|
|  | /s/Richard S. McLaughlin |
|  | Richard S. McLaughlin, BBO No.: 550424 |
|  | Jay M. Mullen, BBO No.: 551777 |
|  | Six Edgerly Place, 3rd Floor |
|  | Boston, MA 02116 |
|  | (617) 338-9200 |
| Dated: April 29, 2016 | jmullen@m2esq.com |